UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

EDER SALMERON,

                Plaintiff,                        Civil Action No. _____

    -v.-                                 ACTION UNDER 29 U.S.C. § 216(b)

DIAZ B CATERING LLC d/b/a          COMPLAINT
DIAZ CATERING,
DIAZ TOWING CORP., and             JURY TRIAL DEMANDED
REINALDO DIAZ, individually,

                Defendants.

------------------------------------------------------------X

Plaintiff EDER SALMERON, by and through his attorneys, STILLMAN LEGAL, P.C., brings this Action against Defendants DIAZ B CATERING LLC d/b/a DIAZ CATERING, DIAZ TOWING CORP., and REINALDO DIAZ, individually, and alleges, upon personal knowledge, information, and belief, as follows:

## NATURE OF THE ACTION

1. This Complaint seeks to recover unpaid minimum wages, unpaid overtime wage compensation, unpaid and unlawfully withheld earned wages, spread-of-hours compensation, statutory damages, liquidated damages, and other relief for Plaintiff EDER SALMERON, a former employee of Defendants, who worked out of Defendants' commercial yard in Southampton, Suffolk County, New York, within the Eastern District of New York.

2. Plaintiff worked for Defendants from approximately mid-May 2024 through June 25, 2026.

1

3. Throughout his employment, Plaintiff worked approximately six (6) days per week on shifts that regularly began at approximately 2:00 a.m. and ended between approximately 5:00 p.m. and 7:00 p.m., and on occasion as late as 8:00 p.m., 9:00 p.m., or later, totaling approximately eighty-eight (88) to ninety-five (95) hours per workweek.

4. Throughout his employment, Defendants paid Plaintiff a fixed day rate of Two Hundred Ten Dollars ($210.00) per day, in cash, without regard to the number of hours Plaintiff actually worked on any given day, and without any separately identified or separately paid overtime premium.

5. At all times relevant hereto, Defendants were required, under New York Labor Law § 652 and its implementing regulations, to pay Plaintiff at not less than the applicable minimum hourly wage rate for employers in Nassau, Suffolk, and Westchester Counties, which was $16.00 per hour from January 1, 2024 through December 31, 2024; $16.50 per hour from January 1, 2025 through December 31, 2025; and $17.00 per hour from January 1, 2026 through the end of Plaintiff's employment.

6. At all times relevant hereto, Defendants were required, under 29 U.S.C. § 206 and New York Labor Law § 652, to compensate Plaintiff at not less than the applicable minimum hourly wage for all hours worked, and, under 29 U.S.C. § 207 and 12 N.Y.C.R.R. § 142-2.2, to compensate Plaintiff at one and one-half times the regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

7. Defendants' fixed day rate of $210.00, divided across the approximately eighty-eight (88) or more hours Plaintiff worked each workweek, yielded an effective hourly rate below the applicable New York minimum wage in every workweek of Plaintiff's employment. Defendants therefore failed to pay Plaintiff the applicable minimum wage for all hours worked, and

2

additionally failed to pay Plaintiff any overtime premium whatsoever for the approximately forty-eight (48) or more overtime hours he worked each workweek.

8. Beginning in approximately the second week of November 2025, and continuing through the end of Plaintiff's employment, Defendants compounded these violations by failing to pay Plaintiff even his agreed day rate, withholding payment entirely in some workweeks and paying only a portion of the amount due in others.

9. At the conclusion of Plaintiff's employment, Defendant REINALDO DIAZ acknowledged an accrued unpaid wage balance owed to Plaintiff of Ten Thousand Two Hundred Seventy-Six Dollars ($10,276.00). Defendants subsequently transferred a used motor vehicle to Plaintiff, against which Defendant REINALDO DIAZ unilaterally applied a disputed credit of Three Thousand Five Hundred Dollars ($3,500.00), leaving an acknowledged unpaid balance of no less than Six Thousand Seven Hundred Seventy-Six Dollars ($6,776.00). No portion of that balance has been paid.

10. Defendants maintained no timekeeping system of any kind. Plaintiff was never required or permitted to record his hours, never punched a clock, and never received any wage statement, pay stub, or written record of hours worked, rate of pay, or deductions. Plaintiff was paid exclusively in cash.

11. Accordingly, Plaintiff brings this Action for federal and state claims relating to unpaid minimum wages, unpaid overtime wages, unlawfully withheld and unpaid earned wages, spread-of-hours compensation, and violations of the wage notice and wage statement provisions of the New York Labor Law.

12. In connection therewith, Plaintiff seeks his unpaid wages, liquidated damages, statutory damages, pre-judgment and post-judgment interest, declaratory relief, and attorneys' fees and costs pursuant to the FLSA and the NYLL.

**JURISDICTION AND VENUE**

13. This Court has original subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

14. This Court has supplemental jurisdiction over Plaintiff's New York State law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims arise from the same employment relationship, the same compensation practices, and the same common nucleus of operative fact as his federal claims.

15. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

16. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this District. Plaintiff performed the overwhelming majority of his work in Suffolk County, New York, including at Defendants' yard in Southampton, and made deliveries throughout Suffolk County. Venue is additionally proper pursuant to 28 U.S.C. § 1391(b)(1) because, upon information and belief, Defendants reside in this District, the corporate Defendants maintaining an address at 17 Woodridge Road, Hampton Bays, New York 11946, in Suffolk County.

4

17. Assignment to the Central Islip Courthouse is proper under Local Civil Rule 50.1(d) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York because the events giving rise to this action occurred in Suffolk County.

## PARTIES

**Plaintiff**

18. Plaintiff EDER SALMERON is an adult individual. During the relevant period, Plaintiff resided in Riverhead, Suffolk County, New York.

19. Plaintiff was employed by Defendants from approximately mid-May 2024 through June 25, 2026.

20. At all times relevant hereto, Plaintiff was a covered, non-exempt employee within the meaning of the FLSA, 29 U.S.C. § 203(e), and the NYLL, and was not employed in a bona fide executive, administrative, or professional capacity as those terms are defined under the FLSA or the NYLL. Plaintiff's duties were manual and physical in nature and he exercised no independent discretion over matters of significance, no supervisory authority, and no authority to hire, fire, or set compensation.

21. Plaintiff consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b).

**Corporate Defendants**

22. Upon information and belief, Defendant DIAZ B CATERING LLC d/b/a DIAZ CATERING is a limited liability company maintaining an address at 17 Woodridge Road, Hampton Bays, New York 11946-2718, in Suffolk County, New York. Upon information and belief, Defendant has been in existence since approximately 2015 and has operated under the name variations "DIAZ B CATERING LLC" and "DIAZ CATERING."

23. Upon information and belief, Defendant DIAZ TOWING CORP. is a corporation maintaining an address at 17 Woodridge Road, Hampton Bays, New York 11946-2718, in Suffolk County, New York, and a telephone number of (631) 830-5962. Upon information and belief, Defendant DIAZ TOWING CORP. was formed on or about May 4, 2022.

24. Defendant DIAZ B CATERING LLC d/b/a DIAZ CATERING and Defendant DIAZ TOWING CORP. are referred to collectively herein as the "Corporate Defendants."

25. At all times relevant hereto, the Corporate Defendants were "employers" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL, § 190(3) and § 651(6).

26. Upon information and belief, at all times relevant hereto, the Corporate Defendants constituted an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), in that they: (i) had employees engaged in commerce or in the handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) had an annual gross volume of sales made or business done of not less than $500,000.00, exclusive of excise taxes. Upon information and belief, this threshold is satisfied because the Corporate Defendants operated multiple concurrent revenue-generating business lines, including a fleet of mobile food-service vehicles serving customers daily, a towing operation with multiple tow trucks, and a salvage yard that sold used automotive parts to customers throughout eastern Suffolk County on a regular basis.

27. The factual basis for the allegations in Paragraph 26 is as follows. Defendants operated a fleet of mobile food-service vehicles known as "coffee trucks," which Plaintiff supplied daily with food and beverages obtained from a commercial food commissary in Brentwood, New York; a towing operation with multiple tow trucks; and a salvage yard from which Defendants dismantled motor vehicles and sold used automotive parts to customers

throughout eastern Suffolk County. Plaintiff and other employees routinely handled goods and materials that had moved in interstate commerce, including packaged food and beverages, ice, tires, electrical wire and cable, engines, transmissions, and other automotive components. Defendants employed, at minimum, Plaintiff, a general manager, multiple coffee truck operators, at least one mechanic, tow truck operators, and at least one employee hired to replace Plaintiff.

28. In the alternative, and to the extent enterprise coverage is not established, Plaintiff was individually covered by the FLSA in that he was engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a). Plaintiff personally and regularly handled goods that had moved in interstate commerce, including packaged food and beverages, ice, tires, electrical wire and cable, engines, transmissions, and other automotive components.

**Individual Defendant**

29. Upon information and belief, Defendant REINALDO DIAZ is an adult individual residing in Suffolk County, New York.

30. Upon information and belief, at all times relevant hereto, Defendant REINALDO DIAZ was the owner, principal, officer, and/or managing agent of each of the Corporate Defendants.

31. At all times relevant hereto, Defendant REINALDO DIAZ was an "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL, § 190(3) and § 651(6), under the economic reality test, in that he:

    a. hired Plaintiff and set the terms and conditions of his employment;

    b. determined Plaintiff's rate and method of pay, including the fixed day rate of $210.00, the decision to pay Plaintiff exclusively in cash, and the unilateral

7

reduction of Plaintiff's pay to $1,000.00 for a six-day workweek during the final approximately three weeks of Plaintiff's employment;

c. set and controlled Plaintiff's work schedule, personally directed Plaintiff to remain at work beyond the end of his shift, personally assigned Plaintiff's daily tasks, and personally directed Plaintiff to work on holidays;

d. personally paid Plaintiff his wages in cash, personally decided in which workweeks to withhold or partially withhold Plaintiff's wages, and personally negotiated and applied the $3,500.00 vehicle credit against Plaintiff's accrued unpaid wage balance;

e. supervised and controlled Plaintiff's daily work at both the coffee truck operation and the salvage yard and towing operation; and

f. maintained (or failed to maintain) employment and payroll records for Plaintiff, and had the power to hire and fire employees, including the authority he exercised to hire Plaintiff's replacement.

32. Defendant REINALDO DIAZ is jointly and severally liable with the Corporate Defendants for the violations alleged herein.

### JOINT EMPLOYMENT AND SINGLE INTEGRATED ENTERPRISE

33. At all times relevant hereto, Defendants jointly employed Plaintiff within the meaning of the FLSA and the NYLL, and/or constituted a single integrated enterprise.

34. Upon information and belief, the Corporate Defendants were owned and/or controlled by the same individual, Defendant REINALDO DIAZ.

35. Upon information and belief, the Corporate Defendants share a common business address at 17 Woodridge Road, Hampton Bays, New York 11946-2718.

36. The Corporate Defendants' operations were physically integrated. Plaintiff performed work for both operations at a single shared commercial yard located in Southampton, New York, where Defendants' coffee trucks, salvage operation, and tow trucks were all located.

37. The Corporate Defendants' operations were functionally integrated with respect to Plaintiff's labor. On a single workday, and pursuant to the direction of a single supervisor, Plaintiff performed food-service work for the coffee truck operation, salvage and dismantling work for the used-parts operation, additional food-service work, and then used-parts delivery work — alternating between the two businesses multiple times per day.

38. Plaintiff received a single, undifferentiated cash payment of $210.00 per day covering all work performed for both operations. Defendants never allocated Plaintiff's compensation between the two businesses, never provided Plaintiff with separate schedules or separate supervisors for the two businesses, and never advised Plaintiff which entity employed him at any given moment.

39. Defendants had the power to jointly hire and fire Plaintiff, jointly supervised and controlled his work schedule and conditions of employment, jointly determined his rate and method of payment, and jointly maintained (or failed to maintain) his employment records.

40. Accordingly, Defendants are jointly and severally liable to Plaintiff for the violations alleged herein. In the alternative, and to the extent the finder of fact determines that any Corporate Defendant employed Plaintiff only as to particular duties or during particular periods,

9

Plaintiff pleads in the alternative that each Corporate Defendant is liable for the wages attributable to the work performed for its benefit.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Hire and Initial Schedule and Duties

41. Defendants hired Plaintiff in approximately mid-May 2024.

42. From approximately mid-May 2024 through approximately October 2025, Plaintiff worked six (6) days per week. Plaintiff worked Monday through Friday from approximately 2:00 a.m. until approximately 5:00 p.m., and on Saturdays from approximately 4:00 a.m. until approximately 5:00 p.m.

43. Plaintiff's workday began by driving from his residence in Riverhead, New York, to a commercial food commissary located in Brentwood, New York, near Exit 55 of the Long Island Expressway, which supplied food to mobile food-service vehicles. Plaintiff typically arrived at the commissary between approximately 1:40 a.m. and 1:50 a.m. and entered at or immediately before 2:00 a.m., when the commissary opened.

44. At the commissary, Plaintiff selected and collected food and beverages, and performed physical loading work, including lifting and arranging cases of beverages within the delivery van so that the load was properly secured.

45. Plaintiff typically departed the commissary between approximately 3:40 a.m. and 4:00 a.m. and drove to Defendants' yard in Southampton, New York, where Defendants' coffee trucks, tow trucks, and salvage operation were located.

46. Upon arriving at the yard, Plaintiff took no break. He immediately began sorting the food into approximately seven (7) trays for distribution, so that the coffee truck operators could stock their vehicles upon arrival.

47. During this initial period, Plaintiff also worked on a coffee truck.

**B. Expansion of Plaintiff's Duties Beginning in or About October 2025**

48. In or about October 2025, Defendants' manager left her employment with Defendants. Following her departure, Defendants assigned Plaintiff substantial additional duties, including duties previously performed by the departed manager, without any increase in Plaintiff's compensation.

49. From approximately October 2025 forward, Plaintiff's typical workday proceeded as follows:

a. From approximately 2:00 a.m. to approximately 6:00 a.m., Plaintiff collected food from the commissary, transported it to the yard, distributed it to the coffee trucks, and counted out each operator's allocation;

b. From approximately 6:00 a.m. to approximately 7:30 a.m. or 8:00 a.m., Plaintiff completed the food distribution and collected and removed the trash left by the coffee trucks;

c. From approximately 8:00 a.m. to 10:00 a.m., Plaintiff performed manual labor in Defendants' salvage yard. Working as a helper under direction — Plaintiff has no mechanical training — Plaintiff dismantled motor vehicles, including stripping electrical wire and cable for resale, removing tires, and lifting and hoisting engines and transmissions. These tasks were physically heavy;

d. At approximately 10:00 a.m., Plaintiff left the yard to place and collect the coffee trucks' lunch food orders, including from a Chinese restaurant in Suffolk County and from the American Pie pizzeria in Bridgehampton, New York;

e. Plaintiff distributed the lunch food to the coffee truck operators as they arrived, and then personally delivered food to an operator stationed at a separate location. Plaintiff typically completed this task and returned to the yard between approximately 12:30 p.m. and 1:00 p.m.;

f. From approximately 1:00 p.m. onward, Plaintiff assisted the mechanic and performed vehicle maintenance work, and located and pulled used automotive parts from the salvage inventory to fill customer orders, Defendants being engaged in the sale of used automotive parts; and

g. Plaintiff typically completed these tasks between approximately 5:00 p.m. and 6:00 p.m., after which he personally made deliveries of used parts to Defendants' customers, typically finishing between approximately 6:00 p.m. and 7:00 p.m.

50. On numerous occasions, Plaintiff's parts deliveries continued until approximately 8:00 p.m. or 9:00 p.m. Plaintiff is unable to identify the specific dates on which this occurred, but alleges that it occurred on multiple occasions.

51. Plaintiff's delivery routes required him to drive continuously among numerous locations in Suffolk County, New York, including Southampton, Hampton Bays, Bridgehampton, Shirley, Mastic, Calverton, Riverhead, Jamesport, and the Greenport area.

52. Upon information and belief, all of Plaintiff's driving occurred wholly within the State of New York and predominantly within Suffolk County.

53. During approximately two workweeks in February 2026, Defendant REINALDO DIAZ was without a personal vehicle. During those weeks, Defendants required Plaintiff to remain at work until approximately 11:00 p.m. or 12:00 a.m., after the completion of the tow truck routes, in order to drive Defendant REINALDO DIAZ home. Plaintiff would then return to his own home to bathe and change clothes before departing again for work. Plaintiff received no additional compensation of any kind for these hours.

**C. Absence of Timekeeping and Meal or Rest Periods**

54. At no time during Plaintiff's employment did Defendants maintain any system for recording Plaintiff's hours of work. Plaintiff never punched a time clock, never signed a timesheet, and was never asked to record his arrival or departure times.

55. Defendants did not provide Plaintiff with a bona fide meal period. Plaintiff's only opportunity to eat was a period of approximately fifteen (15) to twenty (20) minutes in the entire workday, which he took at approximately 2:00 p.m. or 2:30 p.m., when the coffee truck operators completed their routes and returned to the yard, and which consisted of eating leftover food remaining on the trucks. Plaintiff was not completely relieved from duty during this period and remained subject to interruption and to Defendants' direction.

56. Defendants did not provide Plaintiff with any other rest break.

57. When Plaintiff advised Defendant REINALDO DIAZ that his shift had ended and that he was leaving, Defendant REINALDO DIAZ told him that he could not leave because there was work to be done, and directed him to deliver parts, tires, and rims. Plaintiff was required to remain and perform that work.

58. When Plaintiff was ill and advised Defendant REINALDO DIAZ that he needed to leave or could not work, Defendant REINALDO DIAZ did not respond to his messages. Plaintiff worked while ill throughout his employment.

59. On at least one occasion, Plaintiff advised Defendant REINALDO DIAZ that he would not be working on a federal holiday. Defendant REINALDO DIAZ responded that Defendants always work and directed Plaintiff to report.

**D. Plaintiff's Compensation**

60. Throughout his employment, and until the final approximately three (3) weeks described below, Defendants paid Plaintiff a fixed rate of Two Hundred Ten Dollars ($210.00) per day.

61. Defendants paid Plaintiff exclusively in cash.

62. Plaintiff's $210.00 day rate did not vary with the number of hours he worked. Whether Plaintiff worked eight hours, twelve hours, fifteen hours, seventeen hours, or more on a given day, Defendants paid him $210.00.

63. Defendants never paid Plaintiff any overtime premium, and never identified any portion of his compensation as an overtime premium.

64. Defendants never paid Plaintiff spread-of-hours compensation.

65. At the outset of Plaintiff's employment, Defendants and Plaintiff agreed that Plaintiff's workday would end at approximately 2:00 p.m. That agreed schedule was never honored. Plaintiff never once finished work at 2:00 p.m.

66. Upon information and belief, Defendants paid other employees a daily rate in cash. Defendants paid Plaintiff his $210.00 day rate in weekly lump-sum cash payments.

**E. Defendants' Withholding of Plaintiff's Earned Wages**

67. Beginning in approximately the second week of November 2025, and continuing through the end of Plaintiff's employment, Defendants ceased paying Plaintiff his wages in full.

68. In some workweeks, Defendants failed to pay Plaintiff anything at all. In others, Defendants paid Plaintiff only a portion of the wages he had earned, leaving a balance unpaid. Defendants never provided any explanation, authorization, or written consent for these withholdings, and Plaintiff never authorized any deduction from his wages.

69. On Saturdays, Plaintiff's scheduled workday ended at approximately 5:00 p.m. However, because Defendant REINALDO DIAZ avoided him in order not to pay him, Plaintiff regularly remained at the yard until approximately 9:00 p.m. or 10:00 p.m. waiting for Defendant REINALDO DIAZ to arrive so that Plaintiff could attempt to collect his wages.

70. Plaintiff maintained his own weekly record of the payments Defendants made and failed to make.

71. Upon information and belief, Defendants engaged in the same practice of withholding earned wages as to at least one other employee, Defendants' former manager, to whom Defendant REINALDO DIAZ owed a substantial sum of money and whose resignation was precipitated by that nonpayment.

**F. Reduction of Plaintiff's Pay and Resignation**

72. In or about early June 2026, Plaintiff advised Defendant REINALDO DIAZ that he was exhausted and needed rest, explaining that he rose at approximately 12:20 a.m. or 12:30 a.m. and departed for work at approximately 12:40 a.m. each day in order to arrive early and deliver Defendants' food on time, and that he had never received a day of rest or any acknowledgment of his work.

73. Defendant REINALDO DIAZ responded that he would find someone else. Defendant REINALDO DIAZ thereafter hired another worker.

74. Upon information and belief, Defendants paid the newly hired worker a higher wage than they paid Plaintiff, notwithstanding that the newly hired worker performed fewer duties than Plaintiff performed.

75. Immediately after hiring the new worker, and for the final approximately three (3) weeks of Plaintiff's employment, Defendants unilaterally reduced Plaintiff's compensation to One Thousand Dollars ($1,000.00) for a six (6) day workweek — a reduction from the $1,260.00 that six days at Plaintiff's $210.00 day rate would have yielded.

76. During those final approximately three (3) weeks, Plaintiff's schedule shifted to approximately 5:00 a.m. until as late as 7:00 p.m., 8:00 p.m., 9:00 p.m., or 10:00 p.m.

77. When Plaintiff objected that this was not possible, Defendant REINALDO DIAZ told him that he would not perform the other worker's job for him.

78. On or about June 25, 2026, Plaintiff resigned. Plaintiff told Defendant REINALDO DIAZ that he could no longer continue because Defendant REINALDO DIAZ sometimes paid him and sometimes did not, and when he did pay, never paid Plaintiff's full weekly wages, always leaving a portion unpaid.

**G. Defendants' Acknowledged Unpaid Wage Balance and the Vehicle Credit**

79. At the time of Plaintiff's resignation, Defendants owed Plaintiff Ten Thousand Two Hundred Seventy-Six Dollars ($10,276.00) in earned but unpaid wages. [[NOTE FOR COUNSEL — DO NOT FILE WITHOUT RESOLVING: during the client interview, the interviewer referred at one point to a balance of $7,276.00. Plaintiff stated the original balance

was $10,276.00 and that a $3,500.00 vehicle credit reduced it, which yields $6,776.00. Reconcile against Plaintiff's own weekly records before filing.]]

80. Following his resignation, Plaintiff was without transportation and unable to obtain other work. Plaintiff asked Defendant REINALDO DIAZ to give him a used Mercedes-Benz automobile that was on Defendants' premises so that he could work elsewhere.

81. Defendant REINALDO DIAZ agreed to transfer the vehicle and unilaterally applied a credit of Three Thousand Five Hundred Dollars ($3,500.00) against the wages he owed Plaintiff. Defendant REINALDO DIAZ delivered the title and the vehicle to Plaintiff.

82. Plaintiff accepted the vehicle at that valuation only because he was without transportation, without income, and desperate to obtain work, and because Defendants left him no meaningful alternative. Plaintiff did not freely or voluntarily agree to the $3,500.00 valuation. Plaintiff believes the vehicle was worth substantially less than $3,500.00, and alleges upon information and belief that Defendants acquire such vehicles for approximately $300.00 to $500.00.

83. Plaintiff never used the vehicle to perform any work for Defendants. It was transferred to him only after his employment ended.

84. Even crediting, solely for purposes of this Complaint, the $3,500.00 valuation Defendants assigned to the vehicle, Defendants' acknowledged unpaid wage balance is no less than Six Thousand Seven Hundred Seventy-Six Dollars ($6,776.00). Plaintiff disputes the $3,500.00 valuation and reserves the right to seek recovery of the difference between that amount and the vehicle's actual fair market value as additional unpaid wages.

85. Defendants have paid Plaintiff nothing further. Plaintiff has repeatedly contacted Defendant REINALDO DIAZ by telephone and text message regarding the balance, reminding him that he had agreed to pay Plaintiff on a weekly basis and asking that he honor that commitment as Plaintiff had honored his commitments at work. Defendant REINALDO DIAZ has not responded. When Plaintiff has gone to the yard in person, Defendant REINALDO DIAZ has hidden from him, refused to speak with him, and ignored him.

**H. Defendants' Failure to Provide Wage Notices and Wage Statements**

86. Defendants never provided Plaintiff, at the time of hiring or at any time thereafter, with a written notice containing his rate or rates of pay and the basis thereof, the regular pay day designated by the employer, the name of the employer, any "doing business as" names used by the employer, the physical address of the employer's main office or principal place of business, or the employer's telephone number, as required by NYLL § 195(1).

87. Defendants never provided Plaintiff with any wage statement, pay stub, or written record accompanying any payment of wages, as required by NYLL § 195(3). Defendants paid Plaintiff exclusively in cash, without any accompanying documentation of any kind.

88. Defendants' failure to provide a wage notice caused Plaintiff concrete injury in fact. Because Plaintiff never received written notice of his rate of pay and the basis on which it was calculated, Plaintiff did not know and could not determine whether his fixed $210.00 day rate was intended to compensate a fixed number of hours or an unlimited number of hours, what his regular hourly rate was, or whether that rate satisfied the applicable minimum wage. Plaintiff was therefore unable to recognize that his effective hourly rate fell below the statutory minimum wage, and was unable to recognize that he was entitled to an overtime premium. Had Plaintiff received the required notice, he would have understood the basis of his pay and would have been

able to identify and object to the underpayment, and to seek redress, far earlier than he did. The absence of the notice caused Plaintiff to continue working for approximately two years at unlawfully low wages, and to forgo the opportunity to seek lawfully compensated employment elsewhere.

89. Defendants' failure to provide wage statements caused Plaintiff concrete injury in fact. Because Plaintiff received only undocumented cash payments, Plaintiff had no record of the hours Defendants attributed to him, the rate at which he was being paid, or the amounts Defendants claimed to have paid. When Defendants began withholding portions of his wages, Plaintiff was forced to reconstruct what he was owed from his own informal notes, and was left unable to establish or verify the running balance Defendants had accrued against him. Plaintiff was thereby deprived of the ability to detect the extent of Defendants' underpayments as they occurred, to substantiate his claims to Defendants when he demanded payment, and to assert his statutory rights in a timely manner. The absence of wage statements is directly responsible for the difficulty Plaintiff now faces in establishing the precise amount of wages Defendants withheld from him.

**I. Willfulness**

90. Defendants' violations of the FLSA and the NYLL were willful.

91. Defendants paid Plaintiff exclusively in cash for the entirety of his employment, generated no pay stubs, wage statements, or payroll records, and maintained no record of hours worked. Upon information and belief, this practice was designed to conceal the number of hours Plaintiff worked and the amount he was paid.

92. Defendant REINALDO DIAZ personally directed Plaintiff to continue working after Plaintiff advised that his shift had ended, and therefore knew that Plaintiff was working hours well in excess of forty per week.

93. Defendants deliberately withheld wages that Defendants themselves acknowledged were owed, and Defendant REINALDO DIAZ thereafter avoided Plaintiff's attempts to collect them.

94. Upon information and belief, Defendants' place of business has been visited by government inspectors, and upon information and belief, Defendant REINALDO DIAZ has absented himself from the premises in advance of announced inspections.

**J. Plaintiff's Hours, Regular Rate, and Underpayment**

95. Plaintiff worked approximately six (6) days per week for the entirety of his employment.

96. From approximately mid-May 2024 through approximately September 2025, Plaintiff worked approximately fifteen (15) hours per day Monday through Friday and approximately thirteen (13) hours on Saturdays, for a total of approximately eighty-eight (88) hours per workweek.

97. From approximately October 2025 through approximately early June 2026, Plaintiff's daily end times extended later, and Plaintiff worked approximately ninety (90) to ninety-five (95) hours per workweek.

98. During the final approximately three (3) weeks of his employment, Plaintiff worked approximately six (6) days per week from approximately 5:00 a.m. until as late as 7:00 p.m. to 10:00 p.m., totaling approximately ninety (90) hours per workweek.

99. Because Defendants paid Plaintiff a fixed day rate that was intended to compensate all hours worked in the day, Plaintiff's regular rate of pay for each workweek is properly computed by dividing his total weekly compensation by the total number of hours he actually worked in that workweek.

100. So computed, Plaintiff's regular rate was approximately $14.32 per hour during the period he was paid $1,260.00 for approximately eighty-eight (88) hours of work, and lower still during the periods in which he worked more hours or was paid less.

101. Plaintiff's regular rate as so computed fell below the applicable New York minimum wage in every workweek of his employment. Defendants therefore failed to pay Plaintiff the applicable minimum wage for all hours worked.

102. Because Plaintiff's regular rate fell below the applicable statutory minimum wage, Plaintiff's overtime compensation is properly computed at one and one-half times the applicable statutory minimum wage for each hour worked in excess of forty (40) per workweek. Defendants paid Plaintiff no overtime compensation whatsoever.

103. Plaintiff's daily spread of hours — the interval from the beginning to the end of his workday — exceeded ten (10) hours on virtually every day he worked.

104. The precise amount of Plaintiff's damages cannot be calculated with certainty because Defendants failed to maintain the records they were required by law to keep. Plaintiff's allegations as to hours worked and wages paid reflect his best good-faith estimates and recollection. Plaintiff reserves the right to amend these allegations upon receipt of Defendants' records in discovery.

## FIRST CAUSE OF ACTION
### (Unpaid Minimum Wages Under the FLSA, 29 U.S.C. § 206)
### (Against All Defendants)

105. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

106. At all times relevant hereto, Defendants were Plaintiff's employers within the meaning of 29 U.S.C. § 203(d), and Plaintiff was a covered, non-exempt employee within the meaning of 29 U.S.C. § 203(e).

107. Defendants failed to pay Plaintiff at the applicable federal minimum hourly wage for all hours worked in certain workweeks, in violation of 29 U.S.C. § 206(a). In each workweek in which Defendants withheld all or a portion of Plaintiff's pay, Plaintiff's total compensation, divided by the hours he actually worked, yielded an effective hourly rate below the applicable federal minimum wage.

108. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), extending the limitations period to three (3) years.

109. Plaintiff is entitled to recover his unpaid minimum wages, an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), attorneys' fees, costs, post-judgment interest, and, to the extent liquidated damages are not awarded, pre-judgment interest.

## SECOND CAUSE OF ACTION
### (Unpaid Overtime Wages Under the FLSA, 29 U.S.C. § 207)
### (Against All Defendants)

110. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

111. Defendants failed to compensate Plaintiff at a rate of not less than one and one-half times his regular rate of pay for all hours worked in excess of forty (40) in each workweek, in violation of 29 U.S.C. § 207(a).

112. Plaintiff regularly worked approximately eighty-eight (88) to ninety-five (95) hours per workweek — approximately forty-eight (48) to fifty-five (55) hours in excess of forty (40) — throughout his employment.

113. Defendants paid Plaintiff no overtime premium of any kind at any time during his employment.

114. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a).

115. Plaintiff is entitled to recover his unpaid overtime compensation, an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), attorneys' fees, costs, post-judgment interest, and, to the extent liquidated damages are not awarded, pre-judgment interest.

## THIRD CAUSE OF ACTION
### (Unpaid Minimum Wages Under the New York Labor Law, §§ 652 and 663)
### (Against All Defendants)

116. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

117. At all times relevant hereto, Defendants were Plaintiff's employers within the meaning of NYLL §§ 190(3) and 651(6), and Plaintiff was a covered, non-exempt employee within the meaning of NYLL §§ 190(2) and 651(5).

118. Defendants failed to pay Plaintiff at the applicable New York minimum hourly wage for employers in Nassau, Suffolk, and Westchester Counties for all hours worked, in violation of

NYLL § 652 and the applicable wage order. The applicable minimum wage was $16.00 per hour in 2024, $16.50 per hour in 2025, and $17.00 per hour in 2026.

119. Plaintiff's regular rate, computed by dividing his weekly compensation by the hours he actually worked, fell below the applicable minimum wage in every workweek of his employment.

120. Defendants' violations were willful and lacked a good faith basis within the meaning of NYLL § 663.

121. Plaintiff is entitled to recover his unpaid minimum wages for the six (6) years preceding the filing of this Complaint, liquidated damages in an amount equal to one hundred percent (100%) of the total unpaid wages pursuant to NYLL § 663(1), attorneys' fees, costs, and, to the extent liquidated damages are not awarded, pre-judgment interest at nine percent (9%) per annum pursuant to N.Y. C.P.L.R. §§ 5001–5004.

**FOURTH CAUSE OF ACTION**
**(Unpaid Overtime Wages Under the New York Labor Law and 12 N.Y.C.R.R. § 142-2.2)**
**(Against All Defendants)**

122. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

123. Defendants failed to compensate Plaintiff at one and one-half times his regular rate of pay for all hours worked in excess of forty (40) in each workweek, in violation of NYLL § 650 et seq. and 12 N.Y.C.R.R. § 142-2.2.

124. Because Plaintiff's regular rate fell below the applicable New York minimum wage, Plaintiff's overtime compensation is due at one and one-half times the applicable minimum wage.

125. Defendants' violations were willful and lacked a good faith basis.

126. Plaintiff is entitled to recover his unpaid overtime wages for the six (6) years preceding the filing of this Complaint, liquidated damages in an amount equal to one hundred percent (100%) of the total unpaid overtime wages pursuant to NYLL § 663(1), attorneys' fees, costs, and, to the extent liquidated damages are not awarded, pre-judgment interest.

## FIFTH CAUSE OF ACTION
### (Unlawful Deductions and Withholding of Earned Wages, NYLL §§ 191 and 193)
### (Against All Defendants)

127. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

128. At all times relevant hereto, Plaintiff was a "manual worker" within the meaning of NYLL § 190(4), in that more than one-quarter of his working time was spent performing physical labor, including loading and transporting food and beverages, removing trash, dismantling motor vehicles, removing tires, hoisting engines and transmissions, and loading and delivering automotive parts.

129. Defendants agreed to pay Plaintiff wages at a rate of $210.00 per day, and Plaintiff performed the work for which those wages were owed.

130. Beginning in approximately the second week of November 2025 and continuing through the end of Plaintiff's employment, Defendants failed and refused to pay Plaintiff all wages earned, withholding wages in whole in certain workweeks and in part in others.

131. Defendants' withholding of Plaintiff's earned wages constituted an unauthorized deduction from wages in violation of NYLL § 193. The withholdings were not authorized in writing by Plaintiff, were not for the benefit of Plaintiff, and did not fall within any category of

permissible deduction enumerated in NYLL § 193(1). Additionally, Defendant REINALDO DIAZ's unilateral application of a $3,500.00 credit for a used vehicle against Plaintiff's accrued wage balance constituted a further unauthorized deduction from wages in violation of NYLL § 193, as Plaintiff never authorized such a deduction in writing and the credit was not for Plaintiff's benefit within the meaning of the statute.

132. Defendants further failed to pay Plaintiff his wages within the time required by NYLL § 191.

133. Defendants acknowledged that they owed Plaintiff Ten Thousand Two Hundred Seventy-Six Dollars ($10,276.00) in earned but unpaid wages. Defendants thereafter applied a credit of Three Thousand Five Hundred Dollars ($3,500.00) against that balance, which Plaintiff contends constituted a further unauthorized deduction, leaving no less than Six Thousand Seven Hundred Seventy-Six Dollars ($6,776.00) unpaid even crediting Defendants' claimed deduction.

134. Defendants' violations were willful and lacked a good faith basis.

135. Plaintiff is entitled to recover his unpaid wages, liquidated damages in an amount equal to one hundred percent (100%) of the total unpaid wages pursuant to NYLL §§ 198(1-a) and 663(1), attorneys' fees, costs, and, to the extent liquidated damages are not awarded, pre-judgment interest.

136. This Cause of Action is pleaded in the alternative to the extent, and only to the extent, that any portion of the wages sought herein duplicates wages recoverable under the First, Second, Third, or Fourth Causes of Action. Plaintiff does not seek double recovery of the same unpaid wages.

## SIXTH CAUSE OF ACTION
### (Spread-of-Hours Compensation, 12 N.Y.C.R.R. § 142-2.4)
### (Against All Defendants)

137. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

138. On virtually every day Plaintiff worked, the interval between the beginning and the end of his workday exceeded ten (10) hours.

139. Plaintiff's regular rate of pay did not exceed the applicable New York minimum wage in any workweek of his employment.

140. Defendants failed to pay Plaintiff one (1) additional hour of pay at the applicable New York minimum hourly wage rate for each day on which his spread of hours exceeded ten (10) hours, in violation of 12 N.Y.C.R.R. § 142-2.4.

141. Defendants' violations were willful and lacked a good faith basis.

142. Plaintiff is entitled to recover his unpaid spread-of-hours compensation, liquidated damages in an amount equal to one hundred percent (100%) thereof, attorneys' fees, costs, and, to the extent liquidated damages are not awarded, pre-judgment interest.

## SEVENTH CAUSE OF ACTION
### (Failure to Provide Wage Notice at Time of Hiring, NYLL § 195(1))
### (Against All Defendants)

143. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

144. Defendants failed to provide Plaintiff, at the time of hiring or at any time thereafter, with the written notice required by NYLL § 195(1)(a), in English and in Plaintiff's primary

language, setting forth the rate or rates of pay and the basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and mailing address if different; and the employer's telephone number.

145. Defendants' failure caused Plaintiff the concrete and particularized injuries in fact described in Paragraph 88 above, which are sufficient to confer standing under Article III of the United States Constitution.

146. Defendants' violation was willful.

147. Plaintiff is entitled to recover statutory damages of Fifty Dollars ($50.00) for each workday that the violation occurred or continued to occur, not to exceed Five Thousand Dollars ($5,000.00), together with costs and reasonable attorneys' fees, pursuant to NYLL § 198(1-b).

**EIGHTH CAUSE OF ACTION**
**(Failure to Provide Accurate Wage Statements, NYLL § 195(3))**
**(Against All Defendants)**

148. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

149. Defendants failed to furnish Plaintiff with any statement of wages with any payment of wages, as required by NYLL § 195(3). Defendants paid Plaintiff exclusively in cash without any accompanying documentation whatsoever.

150. Defendants therefore failed to provide Plaintiff with a statement listing the dates of work covered by the payment; the name of the employee; the name, address, and telephone number of the employer; the rate or rates of pay and basis thereof; gross wages; deductions;

allowances claimed as part of the minimum wage; net wages; the regular hourly rate; the overtime rate; the number of regular hours worked; and the number of overtime hours worked.

151. Defendants' failure caused Plaintiff the concrete and particularized injuries in fact described in Paragraph 89 above, which are sufficient to confer standing under Article III of the United States Constitution.

152. Defendants' violation was willful.

153. Plaintiff is entitled to recover statutory damages of Two Hundred Fifty Dollars ($250.00) for each workday that the violation occurred or continued to occur, not to exceed Five Thousand Dollars ($5,000.00), together with costs and reasonable attorneys' fees, pursuant to NYLL § 198(1-d).

## NINTH CAUSE OF ACTION
### (Breach of Contract — Pleaded in the Alternative)
### (Against All Defendants)

154. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

155. Plaintiff and Defendants entered into an agreement pursuant to which Defendants would pay Plaintiff $210.00 for each day worked.

156. Plaintiff fully performed his obligations under that agreement.

157. Defendants breached the agreement by failing to pay Plaintiff the agreed compensation for work performed, leaving an acknowledged balance of Ten Thousand Two Hundred Seventy-Six Dollars ($10,276.00), against which Defendants applied a disputed credit of Three Thousand Five Hundred Dollars ($3,500.00), leaving no less than Six Thousand Seven

Hundred Seventy-Six Dollars ($6,776.00) unpaid. Plaintiff disputes the $3,500.00 valuation and reserves the right to seek recovery of the full acknowledged balance.

158. As a direct and proximate result of Defendants' breach, Plaintiff has been damaged in an amount to be determined at trial, together with pre-judgment interest at nine percent (9%) per annum pursuant to N.Y. C.P.L.R. §§ 5001–5004.

159. This Cause of Action is pleaded solely in the alternative, and only to the extent that Plaintiff is found not to be entitled to recover the same wages under the statutory claims pleaded above. Plaintiff does not seek double recovery of the same unpaid wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff EDER SALMERON respectfully requests that this Court enter judgment against Defendants DIAZ B CATERING LLC d/b/a DIAZ CATERING, DIAZ TOWING CORP., and REINALDO DIAZ, jointly and severally, as follows:

A. Declaring that Defendants have violated the Fair Labor Standards Act and the New York Labor Law, and that such violations were willful;

B. Awarding Plaintiff his unpaid minimum wages under the FLSA and the NYLL, in an amount to be determined at trial;

C. Awarding Plaintiff his unpaid overtime wages under the FLSA and the NYLL, in an amount to be determined at trial;

D. Awarding Plaintiff his unpaid and unlawfully withheld earned wages under NYLL §§ 191 and 193, in an amount to be determined at trial and not less than $10,276.00, or, in the alternative and crediting Defendants' claimed vehicle credit, not less than $6,776.00;

E. Awarding Plaintiff his unpaid spread-of-hours compensation, in an amount to be determined at trial;

F. Awarding Plaintiff liquidated damages in an amount equal to one hundred percent (100%) of his total unpaid wages, pursuant to 29 U.S.C. § 216(b) and/or NYLL §§ 198(1-a) and 663(1), it being understood that Plaintiff does not seek cumulative liquidated damages under both statutes for the same unpaid wages;

G. Awarding Plaintiff statutory damages of $5,000.00 pursuant to NYLL § 198(1-b) for Defendants' failure to provide the wage notice required by NYLL § 195(1);

H. Awarding Plaintiff statutory damages of $5,000.00 pursuant to NYLL § 198(1-d) for Defendants' failure to provide the wage statements required by NYLL § 195(3);

I. In the alternative, and only to the extent Plaintiff is found not entitled to recover the same sums under the statutory claims pleaded herein, awarding Plaintiff damages for breach of contract in an amount to be determined at trial;

J. Awarding Plaintiff pre-judgment interest at nine percent (9%) per annum pursuant to N.Y. C.P.L.R. §§ 5001–5004 on all amounts for which liquidated damages are not awarded;

K. Awarding Plaintiff post-judgment interest pursuant to 28 U.S.C. § 1961;

L. Awarding Plaintiff his reasonable attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663; and

M. Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all issues so triable.


Dated: New York, New York
    August 5, 2026


            **STILLMAN LEGAL, P.C.**

            *Lina F Stillman, Esq.*
            Lina Stillman, Esq.
            Attorneys for Plaintiff
            42 Broadway, 12th Floor
            New York, New York 10004
            Tel (212) 203-2417
            www.StillmanLegalPC.com